1   Mitchell F. Boomer (State Bar No. 121441)
    Alka Ramchandani (State Bar No. 262172)
2   JACKSON LEWIS P.C.
    50 California Street, 9th Floor
3   San Francisco, CA  94111-4615
    Telephone:  (415) 394-9400
4   Facsimile:  (415) 394-9401
    E-mail:  boomerm@jacksonlewis.com
5   E-mail:  alka.ramchadani@jacksonlewis.com

6   Attorneys for Defendant
    INTERNATIONAL BUSINESS
7   MACHINES CORPORATION

8                    UNITED STATES DISTRICT COURT

9                   NORTHERN DISTRICT OF CALIFORNIA

10

11  PIYUSH GUPTA,                          Case No.  5:14-cv-01358-EJD

12              Plaintiff,                  **DEFENDANT INTERNATIONAL
                                            BUSINESS MACHINES
13        v.                               CORPORATION'S NOTICE OF
                                            MOTION AND MOTION FOR
14  INTERNATIONAL BUSINESS MACHINES        SUMMARY JUDGMENT OR, IN THE
    CORPORATION (IBM),                     ALTERNATIVE, SUMMARY
15                                          ADJUDICATION;
                                            MEMORANDUM OF POINTS AND
16              Defendant.                  AUTHORITIES IN SUPPORT OF
                                            MOTION FOR SUMMARY
17                                          JUDGMENT OR, IN THE
                                            ALTERNATIVE, SUMMARY
18                                          ADJUDICATION**

19                                          Date:        July 30, 2015
                                            Time:        9 a.m.
20                                          Ctrm.:       4, 5th Floor
                                            Judge:       Hon. Edward J. Davila
21                                                       District Judge

22
                                            Removal Filed:  March 26, 2014
23                                          Trial Date:     January 5, 2016

24

25

26

27

28

**TABLE OF CONTENTS**

Page

STATEMENT OF ISSUES............................................................................1

I.      INTRODUCTION .............................................................................2

II.     STATEMENT OF FACTS .................................................................2

        A.      Gupta Told His Managers That He Wanted to Leave IBM. ....................2

        B.      Plaintiff Suggested To His Boss That She Select HIM for Layoff..............3

        C.      IBM Selected Gupta for Layoff as Part of a Reduction in Force. ...........3

        D.      IBM Also Allowed Gupta to Retire. ............................................4

        E.      IBM Approved Gupta's Two Requests for Accommodation. ..................4

        F.      IBM Properly Administered Gupta's Short-Term Disability Leave Request
                By Granting His Request, and Then Canceling It – Again, At His Request. ..........5

        G.      Gupta Chose To Withdraw His STD Claim. ....................................6

        H.      Gupta Misinterpreted General Statements from HR About STD. ............6

        I.      Gupta Declined IBM's Separation Offer After His Employment Ended. ...............7

III.    LEGAL ARGUMENT .......................................................................8

        A.      Standard for Summary Judgment. ............................................8

        B.      Gupta's First Cause of Action for Disability Discrimination Lacks Merit.............9

                1.      Gupta cannot make out a *prima facie* case of discrimination......................9

                2.      IBM selected Gupta for layoff for legitimate, non-discriminatory
                        reasons. ...........................................................10

                3.      No Evidence of Pretext Exists. ...............................................11

        C.      Gupta's Second Cause of Action for "Failure to Engage in the Interactive
                Process" Fails as a Matter of Law. ..........................................12

        D.      Gupta Cannot Sustain His Reasonable Accommodation Cause of Action............13

        E.      Gupta's Fourth Cause of Action for Fraud Must Be Dismissed............................14

                1.      IBM Made No Misrepresentations .............................................14

                2.      Matchak Lacked Knowledge of Falsity. .......................................16

                3.      Matchak Had No Intent To Deceive. .........................................16

i

4.   Gupta Cannot Establish Detrimental Reliance. ........................................ 16

F.   Gupta's Public Policy Cause of Action Must Be Dismissed. ............................... 17

G.   Plaintiff's Prayer for Punitive Damages Should Be Stricken. ............................. 17

IV.   CONCLUSION ............................................................................................................. 18

DEF'S NOM & MPA ISO OF ITS MOTION FOR SUMMARY
JUDGEMENT OR, IN THE ALT., SUMMARY ADJUDICATION                Case No.  5:14-cv-01358-EJD

1

**TABLE OF AUTHORITIES**

2

**Page(s)**

3  CASES

4  *Anderson v. Liberty Lobby, Inc.*

5      477 U.S. 242 (1986)...............................................................................................8

6  *Celotex Corp. v. Catrett,*
    477 U.S. 317 (1986)...............................................................................................8

7
8  *Cruz v. Home Base*
    (2000) 83 Cal. App.4th 160 ................................................................................18

9  *Dale v. Chicago Tribune Co.*
    (7th Cir. 1986) 797 F.2d 458 ............................................................................. 11

10
11  *Deschene v. Pinole Point Steel Co.*
    (1999) 76 Cal.App.4th 33 ...................................................................................12

12
13  *Dumas v. New United Motor Mfg.,*
    2007 U.S. Dist. LEXIS 30042 (N.D. Cal. Apr. 24, 2007) .........................................17

14  *Dyna-Med, Inc. v. Fair Employment & Hous. Comm'n*
    (1987) 43 Cal.3d 1379 .......................................................................................17

15
16  *Estate of Tucker ex rel. Tucker v. Interscope Records,*
    515 F.3d 1019 (9th Cir. 2008) ..............................................................................9

17
18  *Faust v. Cal. Portland Cement Co.,*
    150 Cal.App.4th 864 (2007) ................................................................................9

19  *Gelfo v. Lockheed Martin Corp.*
    (2006) 140 Cal.App.4th 34 ................................................................................13

20
21  *Green v. State*
    (2007) 42 Cal.4th 254 ........................................................................................10

22  *Green v. State of California*
23      (2007) 112 Cal.4th 254 ......................................................................................10

24  *Guz v. Bechtel National, Inc.*
    (2000) 24 Cal.4th 317 ..........................................................................................9

25
26  *Guz v. Bechtel National, Inc.,*
    *supra,* 24 Cal.4th..............................................................................9, 11, 12

27  *Joanou v. Coca Cola Co.,*
28      26 F.3d 96 ( 9th Cir. 1994) .................................................................................11

*Lawler v. Montblanc N. Am., LLC,*
    2011 U.S. Dist. LEXIS 41339 (N.D. Cal. 2011) .................................................10

*Liu v. Amway Corporation,*
    247 F.3d 1125 (9th Cir. 2003) ....................................................................11

*Marks v. Loral Corp.*
    (1997) 57 Cal.App.4th 30 ..........................................................................11

*Morgan v. Regents of Univ. of California*
    (2000) 88 Cal.App. 52 ...............................................................................9

*Morgan v. Regents of the University of California*
    (2001) 88 Cal.App.4th 52 ..........................................................................11

*Neisendorf v. Levi Strauss Company*
    (2006) 143 Cal.App.4th 509 ......................................................................15

*Nelson v. United Technologies*
    (1999) 74 Cal.App.4th 597 ........................................................................17

*Nissan Fire & Marine Ins. Co. v. Fritz Cos.,*
    210 F.3d 1099 (9th Cir. 2000) .....................................................................8

*Scotch v. Art Institute of California*
    (2009) 173 Cal.App.4th 986 ......................................................................13

*Silo v. CHW Med. Found.*
    (2002) 27 Cal.4th 1097 ............................................................................17

*Stevenson v. Superior Court*
    (1997) 16 Cal.4th 880 ..............................................................................17

*Stewart v. Cintas Corp., supra,* 25 AD ..................................................................9

*Thrifty Oil Co. v. Bank of America Nat. Trust & Sav. Ass'n,*
    322 F.3d 1039 (9th Cir. 2003) .....................................................................8

*White v. Ultramar, Inc.*
    (1999) 21 Cal.4th 563 ..............................................................................17

*Wilson v. County of Orange*
    (2009) 169 Cal.App.4th 1185 ....................................................................13

*Zeinali v. Raytheon Co.,*
    636 F.3d 544 (9th Cir 2011) .......................................................................9

**STATUTES**

California Civil Code Section 3294(b) ..................................................................17

California Civil Code Section 3294(c) (1)..................................................................18

California Code of Regulations, Title 2, Section  ...................................................15

California Government Code Section 12940(m) .....................................................13

**OTHER AUTHORITIES**

Federal Rules of Civil Procedure Rule 56 .................................................................1

DEF'S NOM & MPA ISO OF ITS MOTION FOR SUMMARY
JUDGEMENT OR, IN THE ALT., SUMMARY ADJUDICATION          Case No.  5:14-cv-01358-EJD

1    TO THE HONORABLE COURT, PLAINTIFF, AND HIS ATTORNEYS OF RECORD:

2        **PLEASE TAKE NOTICE THAT** on July 30, 2015, at 9 a.m. in Courtroom 4, 5th Floor,

3    before the Honorable Edward J. Davila, District Judge of the above-entitled Court, located at

4    280 South 1st Street, San Jose, California, 95113, Defendant INTERNATIONAL BUSINESS

5    MACHINES CORPORATION ("IBM") will move this Court for an order granting summary

6    judgment in its favor against Plaintiff PIYUSH GUPTA ("Plaintiff" or "Gupta") as to Plaintiff's

7    Complaint in its entirety, or in the alternative, for partial summary judgment on the issues stated

8    below in the Statement of Issues.

9        IBM moves for summary judgment, or partial summary judgment of individual causes of

10   action, pursuant to Federal Rules of Civil Procedure Rule 56.  This motion is based on the

11   grounds that no genuine fact issues exist and that IBM is entitled to prevail on Plaintiff's

12   Complaint and the issues set forth below as a matter of law.  This motion is based on this Notice

13   of Motion for Summary Judgment or Partial Summary Judgment and Memorandum of Points and

14   Authorities and concurrently filed supporting Declarations of Inhi Cho Suh, Edward Matchak,

15   and Mitchell F. Boomer, together with such oral and documentary evidence as the Court may

16   permit.

17                          **STATEMENT OF ISSUES**

18       Do undisputed facts preclude Plaintiff from establishing elements necessary to prove his:

19       (1) first cause of action for alleged disability discrimination in violation of the California

20   Fair Employment and Housing Act ("FEHA")?

21       (2) second cause of action for alleged failure to engage in the "interactive process" under

22   FEHA?

23       (3) third cause of action for alleged failure to reasonably accommodate under FEHA?

24       (4) fourth cause of action for alleged fraudulent inducement of employment? and,

25       (5) fifth cause of action for alleged wrongful termination in violation of public policy?

26       Do undisputed facts preclude Plaintiff from meeting the standard necessary to justify an

27   award of punitive damages as a matter of law?

28       Finally, should the Court grant summary judgment or partial summary judgment in

1

1   accordance with Federal Rule of Civil Procedure 56?

2   <u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

3   **I.      <u>INTRODUCTION</u>**

4          In 2013, Defendant International Business Machines Corporation (hereinafter "IBM") laid

5   off Plaintiff Piyush Gupta ("Gupta") as part of a routine reduction in force.   Before his layoff,

6   Gupta had struggled in his job and expressed a desire to leave IBM.       Indeed, <u>Gupta</u>

7   <u>recommended to his manager that she select him for layoff</u>.

8          Gupta now contends IBM discriminated against him by following his own suggestion to

9   lay him off because he had previously requested – and IBM routinely granted – two minor

10  accommodations for lower back pain.  The evidence confirms this notion to be as frivolous as it

11  sounds.   Equally absurd lies his fraudulent inducement claim which rests on the theory that

12  generic statements by an IBM HR representative constituted actionable misrepresentation.

13         Gupta's Complaint alleges five causes of action: (1) Disability Discrimination in violation

14  of the California Fair Employment and Housing Act (FEHA); (2) Failure to Engage in a Timely,

15  Good Faith "Interactive" Process with respect to his alleged disability; (3) Failure to Provide

16  Disability Accommodation; (4) Fraud in the Inducement; and (5) Wrongful Termination in

17  Violation of Public Policy.  As detailed below, each cause of action fails as a matter of law.

18  **II.     <u>STATEMENT OF FACTS</u>**

19         IBM hired Plaintiff Piyush Gupta in May 2009 when it acquired a startup company he had

20  co-founded.  [Deposition of Piyush Gupta ("Gupta Depo.") at 27:23-28:8; 31:14-16.]  Gupta had

21  previously worked for IBM between 1984 and 1995.  [Gupta Depo. at 19:17-21.]  On both

22  occasions, he served as an at-will employee. [Gupta Depo. 167:3-169:8; Ex. 21.]

23         **A.      <u>Gupta Told His Managers That He Wanted to Leave IBM.</u>**

24         Unfortunately, Gupta underperformed and his performance progressively declined during

25  his second tour of duty with IBM.   His performance evaluation for 2012 reflects his

26  unsatisfactory performance as his manager rated him a "3" on a scale of 4, meaning *"among the*

27  *lowest contributors this year, needs to improve."*  [Gupta Depo. 205:2-6; Ex 25; Declaration of

28  Inhi Cho Suh ("Suh Decl.") ¶3, 4, Ex. A.]  In his self-evaluation portion, Gupta admitted that his

2

1    DB2 Product Management team performed poorly in 2012 and his portfolio did not meet revenue

2    objectives for the year. [Gupta Depo. 201:16-203:3, Ex. 25; Suh Decl. ¶ 4, Ex. A.]

3          Significantly, in an email to Senior Vice-President Bob Picciano dated February 22, 2013,

4    Gupta described one of the groups he worked with as *"toxic."*  More importantly, he described

5    himself as *"extremely unhappy," "tired," and "frustrated."*  Tellingly, Gupta also stated that

6    *"I believe I have outlived my usefulness.  I would like to discuss moving on after the quarter is*

7    *over."* [Gupta Depo. 54:1-56:17; Ex. 1; Suh Decl. ¶ 5.]

8          On March 28, 2013, Gupta also told his immediate manager, Inhi Cho Suh ("Suh"), that

9    he planned to *"move on"* from IBM.  [Gupta Depo. 138:21-139:21, 141:1-4, Ex. 11; Suh Decl.

10   ¶ 6, Ex. B.]  Despite his poor performance in 2012 and his stated desire to leave IBM, Suh spoke

11   to Gupta in March of 2013 about a possible new individual role for him pursuant to which he

12   would travel to India one to two weeks per month to serve as an "advisor" dedicated to meeting

13   with clients, supporting IBM's sales teams, and hopefully drive sales for IBM products.  [Gupta

14   Depo. 67:24-68:2, 68:20-69:22, 71:1-10; Suh Decl. ¶ 7.]  Suh obtained approval to try this new

15   concept, and Gupta started this new role on or about early April 2013.  [Suh Decl. ¶ 7.]

16         **B.      Plaintiff Suggested To His Boss That She Select HIM for Layoff.**

17         In the spring of 2013, Suh was directed to make recommendations about who from her

18   Product Management & Strategy group should be laid off in a planned reduction in force.  [Suh

19   Decl. ¶ 11.]  Before making her recommendations, Suh spoke to Mr. Gupta to get his opinions

20   about some individuals who had reported to him in his previous management role.  [Gupta Depo.

21   76:4-77:25; Suh Decl. ¶ 12.]  During that conversation, Mr. Gupta made a comment that stood out

22   to Suh, stating words to the effect of, *"Inhi, if you have to lay somebody off, you should pick me."*

23   [Suh Decl. ¶ 12.]  Gupta also provided some logical reasons for why she should select him.  [Id.]

24   Gupta admits he recommended to Suh that if she had to lay someone off, then she should *"put*

25   *him"* on her *"list."* [Gupta Depo. 77:19-25.]

26         **C.      IBM Selected Gupta for Layoff as Part of a Reduction in Force.**

27         In June 2013, IBM's Software Group did in fact implement a broad reduction in force

28   (referred to by IBM as a "Resource Action") to streamline operations, reduce costs, and improve

                                                    3

1    productivity. [Suh Decl. ¶ 11; Declaration of Ed Matchak ("Matchak Decl.") ¶ 4.] IBM Software

2    Group's broad Resource Action resulted in significant layoffs. [Id.; Gupta Depo. 215:11-14.]

3          Suh ultimately decided to select Mr. Gupta for layoff as part of this Resource Action.

4    [Suh Decl. ¶13; Gupta Depo. 74:8-24.]  Suh based her decision in part on her knowledge of

5    Mr. Gupta's past performance and the fact his position had been a newly created luxury for her

6    group, and his role could be absorbed by others in seller field deployment roles more easily than

7    certain other positions.  [Suh Decl. ¶13.]  However, the fact Gupta had personally recommended

8    to her that she select him for layoff also heavily influenced her decision, as he seemed willing, if

9    not anxious, to leave IBM.  [Suh Decl. ¶13.]  Additionally, because Mr. Gupta was about to

10    complete 15 years of total service with IBM, Suh knew he would be eligible to receive IBM

11    retirement benefits in addition to any severance benefits available to him due to being selected for

12    layoff as part of the Resource Action.  [Id.]

13          On or about June 19, 2013, Suh contacted Gupta personally and told him she was: *"going*

14    *to take you up on your suggestion"* (to lay him off) and that she had selected him for layoff as

15    part of IBM's June 2013 Resource Action.  [Gupta Depo. 75:12-15, 78:7-13; Suh Decl. ¶14.]

16         **D.**     **IBM Also Allowed Gupta to Retire.**

17          While IBM thus laid off Gupta through this reduction in force, it recognized Gupta was

18    also retirement eligible.  [Suh Decl. ¶¶ 13, 14; Gupta Depo. 78:14-22; 79:7-17.]  Accordingly,

19    IBM bridged Gupta's employment through August 31, 2013, allowing him to retire with full

20    eligibility for IBM's retiree benefits program, while remaining eligible to receive the package of

21    severance benefits offered to individuals selected for layoff as part of the resource action.  [Gupta

22    Depo. 81:1-25; Suh Decl. ¶ 13.]

23          Gupta told co-workers he had retired from IBM.  [Gupta Depo. 129:9-12, Ex. 6; Suh Decl.

24    ¶15.]  He also received a retirement party.  [Gupta Depo. 162:6; Suh Decl. ¶ 15.]

25         **E.**     **IBM Approved Gupta's Two Requests for Accommodation.**

26          Gupta has a malady experienced by many men in their 50s -- lower back pain.  Even

27    though he worked from his home, he now contends his work for IBM (i.e., "sitting" for extended

28    periods of time using the computer, talking on the phone, and flying long distance) exacerbated

1   his condition.  Gupta voluntarily informed Suh and others on March 18, 2013: *"Good news is that*

2   *there is nothing permanently damaged or wrong with my back.  I'm having issues because of over*

3   *use…"* and then described his plan to limit his "hill hikes" and other strenuous activities.  [Gupta

4   Depo. 119:16-22, Ex. 3; Suh Decl. ¶8, Ex. D.]    For purposes of this motion, however, IBM

5   assumes *arguendo* that his back pain amounted to a disability.

6         In early 2013, Gupta requested two separate accommodations:  (1) permission to fly

7   business class on overseas flights and (2) an ergonomic workspace.  [Gupta Depo. 108:2-109:25;

8   114:1-116:6.]  No dispute exists that Suh and IBM granted both his requests.  [Id.; Suh Decl. ¶ 9,

9   10, Ex. E.]

10        IBM decided, however, not to deliver the ergonomic workstation to his home (where he

11   worked remotely) because his employment was scheduled to end shortly after the equipment

12   would arrive.  [Gupta Depo. 129:13-19; Ex. 7; Suh Decl. ¶ 24, Ex. H.]   Gupta appealed, arguing

13   he should be able to try out the equipment at his home, even after his employment ended, and

14   then return it to IBM.  [Gupta Depo. 128:18-129:8.]  In the process, he made a telling admission:

15   *"Instead of going on disability, I have chosen to retire."*  [Gupta Depo 129:9-12, Ex. 7.]

16        Gupta also quibbled about "bureaucratic delay" in getting approval for the ergonomic

17   furniture (a 3½ month process), but denies any other criticism of IBM's efforts to accommodate

18   him.  [Gupta Depo. 178:10-23.]  Nor did he ever complain about alleged discrimination or

19   denial of accommodation at any time during his employment.  [Gupta Depo. 191:8-22; Ex. 13;

20   Suh Decl. ¶ 23; Matchak Decl. ¶ 18.]

21   ### F.    IBM Properly Administered Gupta's Short-Term Disability Leave Request
22   ### By Granting His Request, and Then Canceling It – Again, At His Request.

23        After learning about his layoff, Gupta contemplated short-term disability leave (STD).  He

24   submitted a request for STD leave and obtained approval from his doctor.  IBM's Integrated

25   Health Services group approved his STD request.  [Gupta Depo. 150:15-151:1; Ex. 14.]

26        Around this same time, Gupta spoke to Suh and they both agreed it could be useful for

27   him to make one final business trip to India on behalf of IBM for the purpose of introducing

28   and/or developing his relationships with certain executives in India.  [Suh Decl. ¶ 17; Gupta

1   Depo. 90:13-21.]  Mr. Gupta said he thought this would be important, and he enthusiastically

2   promoted the idea of making this final trip on IBM's behalf.  [Suh Decl. ¶ 17; Gupta Depo. 96:3-

3   7.]

4          Suh later learned however that Gupta had been approved for short-term disability leave

5   ("STD") to rest his back.  She told Gupta that if he was on STD, then he could not go on the trip.

6   [Suh Decl. ¶ 18, Ex. F; Gupta Depo. 91:22-24.]  Gupta, however, assured her that he was

7   physically able to make this trip and that he was looking forward to doing so.  [Suh Decl. ¶ 18.]

8   Gupta also said he planned to talk to his doctor about withdrawing his request for STD.  [Suh

9   Decl. ¶ 18.]

10          **G.      Gupta Chose To Withdraw His STD Claim.**

11          Gupta did in fact speak to his doctor who in turn submitted paperwork withdrawing his

12   STD request.  [Gupta Depo 92:24-93:2, 96:8-12, 152:17-153:17; 155:20-156:1, 232:4-7, Exs. 9,

13   15, 28; Suh Decl. ¶ 18.]  After IBM received this paperwork, it canceled his previously approved

14   STD leave.  [Suh Decl. ¶ 18, Ex. F.]

15          Suh never pressured or insisted that Gupta make this trip.  [Suh Decl. ¶ 18.]  Nor did she

16   encourage him to cancel or withdraw his previously approved STD leave in order to do so.  [Id.]

17   As Gupta wrote to IBM's Integrated Health Service's Mary Temo on or about August 8, 2013:

18   "*Instead of going on disability, I have chosen to retire*."  [Gupta Depo. 129:9-12, Ex. 7.]  Since

19   his doctor was comfortable allowing Gupta to work and make the trip to India, and he wanted to

20   do so, Suh had no reason to stand in his way.  [Suh Decl. ¶ 18.]

21          In August 2013, Mr. Gupta took the business trip to India on IBM's behalf.  He flew

22   business class, and suffered no back pain exacerbation.  [Gupta Depo. 131:14-25, Ex. 8; Suh

23   Decl. ¶ 20, Ex. G.]  He then extended the trip into a personal vacation overseas.  (Consequently,

24   he was overseas on vacation on the last day of his employment with IBM.)  [Gupta Depo. 96:23-

25   97:6; Suh Decl. ¶ 19; Matchak Decl. ¶ 6.]

26          **H.      Gupta Misinterpreted General Statements from HR About STD.**

27          Based on his decision to opt out of STD, Gupta was not on STD when his employment

28   ended.  [Gupta Depo. 148:16-20; Matchak Decl. ¶ 17.]  Gupta now claims he would not have

6

made this final trip to India, and would not have canceled his STD leave, if he had been told by

IBM HR representative Ed Matchak that he could not be terminated while out on STD.  [See

Gupta Depo. 93:7-25.]  This claim distorts Matchak's written remarks to him dramatically.  In

brief, Gupta initiated an "Instant Messaging Chat" with Matchak and asked vague questions about

whether IBM could separate an employee on STD.  Matchak gave the following information:

- HR would typically review the situation with IBM medical first before delivering notice of separation, "*but ... there's no legal or other reason that prohibits us [IBM] from separating a disabled (STD) employee.*"
- The company would work with medical to decide when the appropriate time to notify the employee of his/her discharge and/or hold off on any performance management decisions.
- Gupta should "*feel free to let me [i.e., Matchak] know if, when you return, we need to get a call with the medical folks.*"

[Matchak Decl. ¶ 8, 9, Ex. M.]

    In short, Matchak merely told Gupta that whether or not someone who had been selected

for layoff or discharge and subsequently applied for STD would be discharged before exhausting

STD benefits would depend on circumstances to be evaluated by HR and IBM Medical.

[Matchak Decl. ¶ 10.]  He never told Gupta one way or the other whether STD would be cut-off

based upon a previously scheduled termination date resulting from a Resource Action.  [Id.]  He

also invited Gupta to follow up if he wanted to initiate discussions with IBM Medical, but Gupta

never did so.  [Matchak Decl. ¶ 13, 14.]

### I.   Gupta Declined IBM's Separation Offer After His Employment Ended.

    Gupta received his severance package from IBM in July 2013 while he was in India, but

did not consider the severance package while on the trip.  [Gupta Depo. 176:4-22; 83:1-8.]  He

returned after his last official work date (i.e., August 15, 2013, though he was bridged for

retirement purposes through August 31), and then coordinated with IBM's HR Department to

discuss his eligibility for severance benefits and other issues.  He requested, and IBM provided

him with, additional time to consider the separation package.  [Suh Decl. ¶¶ 16, 21; Gupta Depo.

141:21-142:4.]  On August 22, 2013, he met with Matchak for his exit interview.  Gupta

ultimately declined to sign his separation package because he felt he should be given the

DEF'S NOM & MPA ISO OF ITS MOTION FOR SUMMARY
JUDGEMENT OR, IN THE ALT., SUMMARY ADJUDICATION                    Case No.  5:14-cv-01358-EJD

1    monetary equivalent of STD benefits.[1]  [Suh Decl. ¶ 22; Matchak Decl. ¶ 6.]

2    **III.   LEGAL ARGUMENT**

3        **A.   Standard for Summary Judgment.**

4        Rule 56 of the Federal Rules of Civil Procedure provides that a court may grant summary

5 judgment "if the movant shows that there is no genuine dispute as to any material fact and the

6 movant is entitled to summary judgment as a matter of law."  See Fed. R. Civ.P. 56(a).

7        The Supreme Court's 1986 "trilogy" of *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986),

8 *Anderson v. Liberty Lobby, Inc*. 477 U.S. 242 (1986), and *Matsushita Electric Industrial Co. v.*

9 *Zenith Radio Corp*., 475 U.S. 574 (1986) requires the party seeking summary judgment to show

10 the absence of a genuine issue of material fact.   [I]n order to carry its burden of production, the

11 [defendant] must either produce evidence negating an essential element of the [plaintiff's claim]

12 or show that the [plaintiff] does not have enough evidence of an essential element to carry its

13 ultimate burden of persuasion at trial.  In order to carry its ultimate burden of persuasion on the

14 motion, the [defendant] must persuade the court that there is no genuine issue of material fact.

15 *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000).  As issue of

16 material fact is "genuine" when the "evidence is such that a reasonable jury could return a verdict

17 for the non-moving party." *Thrifty Oil Co. v. Bank of America Nat. Trust & Sav. Ass'n*, 322 F.3d

18 1039, 1046 (9th Cir. 2003) (quoting *Anderson v. Liberty Lobby, Inc*. 477 U.S. 242, 248 (1986)).

19        Once the moving party shows the absence of a genuine issue of material fact, the

20 nonmoving party must "go beyond the pleadings and by [his] own affidavits, or by the

21 depositions, answers to interrogatories, and admissions on file, designate specific facts showing

22 that there is a genuine issue for trial. *Celotex, supra*, 477 U.S. at 324 (citations omitted).  The

23 opposition to summary judgment "must do more than simply show that there is some

24 metaphysical doubt as to the material facts. *Matsushita, supra*, 475 U.S. at 586.  "The non-

25 moving plaintiff cannot rest upon mere allegations or denials of the adverse party's pleading but

26 must instead produce evidence that sets forth specific facts showing that there is a genuine issue

27

28

---

[1] He also resisted signing his separation agreement based on the theory that IBM violated his statutory rights because his separation documents contained non-compete provisions that violate California Business and Professions Code section 16600. Any argument based on such a theory would be moot as he declined to sign the agreement.

8

DEF'S NOM & MPA ISO OF ITS MOTION FOR SUMMARY
JUDGEMENT OR, IN THE ALT., SUMMARY ADJUDICATION        Case No.  5:14-cv-01358-EJD

1    for trial.  *Estate of Tucker ex rel. Tucker v. Interscope Records*, 515 F.3d 1019, 1030 (9th Cir.

2    2008) (citations omitted).  If the [opponent's] evidence is merely colorable, or is not significantly

3    probative, summary judgment may be granted.  *Liberty Lobby*, supra, 477 U.S. at 249-250

4    (citations omitted).  Accordingly, if Gupta fails to oppose IBM's motion with admissible evidence

5    showing triable issues of material fact, then summary judgment must be granted.

6              **B.      Gupta's First Cause of Action for Disability Discrimination Lacks Merit.**

7              Gupta lacks direct evidence of discrimination.  *Morgan v. Regents of Univ. of California*

8    (2000) 88 Cal.App. 52, 67 (direct evidence proves claim without inference or presumption

9    (citations omitted).  Thus, the *McDonnell Douglas* burden shifting analysis applies.  *Id.; Guz v.*

10   *Bechtel National, Inc.* (2000) 24 Cal.4th 317, 354-355.

11             "When entertaining motions for summary judgment in employment discrimination cases

12   arising under state law, courts sitting in diversity must apply the *McDonnell Douglas* burden-

13   shifting scheme as a federal procedural rule."  *Zeinali v. Raytheon Co.*, 636 F.3d 544, 552 (9th

14   Cir 2011).  Under *McDonnell Douglas*, the employee must first establish a *prima facie* case of

15   discrimination.  Then, if the employee is successful, "the employer must articulate a legitimate,

16   non-discriminatory reason for the challenged action."  Finally, if the employer establishes

17   legitimate non-discriminatory reason for the challenged action, the "employee must show that the

18   reasons is pretextual[,] either directly by persuading the court that a discriminatory reason more

19   likely motivated the employer or indirectly by showing that the employer's proffered explanation

20   is unworthy of credence."  See id.

21             **1.      Gupta cannot make out a *prima facie* case of discrimination.**

22             To establish a *prima facie* case of disability discrimination, Gupta must show: (1) he was

23   disabled; (2) he was otherwise qualified to perform his job with or without accommodation (i.e.,

24   that he is a qualified individual with a disability); and (3) he experienced adverse employment

25   action because of his disability.  *Faust v. Cal. Portland Cement Co.*, 150 Cal.App.4th 864, 886

26   (2007); see also *Guz v. Bechtel National, Inc., supra,* 24 Cal.4th at 354-56.

27             IBM assumes *arguendo* that Gupta can make out the first prong of his *prima facie* case

28   even though whether his condition really interfered with life activities seems dubious.  As noted

9

DEF'S NOM & MPA ISO OF ITS MOTION FOR SUMMARY
JUDGEMENT OR, IN THE ALT., SUMMARY ADJUDICATION                    Case No.  5:14-cv-01358-EJD

1   above, to the extent he was disabled, IBM fully accommodated him.

2       IBM also assumes *arguendo* that Gupta can establish the second prong of his *prima facie*

3   case because he was able to work uneventfully.   However, if summary judgment should be

4   denied, then IBM will produce evidence showing he was not a qualified individual with a

5   disability.  *Green v. State of California* (2007) 112 Cal.4th 254.[2]

6       Gupta cannot satisfy the third prong of his *prima facie* case because he cannot meet his

7   burden of producing non-speculative evidence that an actual causal link exists between IBM's

8   alleged discriminatory motive and his selection for layoff.   *King v. United Parcel Service, Inc.*,

9   152 Cal.App.4th 426, 433 (2007).   Indeed, he lacks any evidence that IBM harbored

10  discriminatory motive or that his selection stemmed from such motivation.

11      Again, undisputed evidence makes clear that IBM's Suh selected Gupta for layoff as part

12  of a legitimate reduction in force, and Suh chose him in large part because <u>he had recommended</u>

13  <u>that she pick him if she had to layoff personnel</u>.  Whereas Gupta now offers only speculation in

14  accusing IBM of discrimination, IBM's undisputed evidence confirms that its decision to layoff

15  Gupta rested solely on legitimate non-discriminatory criteria related to his performance, relative

16  contributions, replaceable position, and, again, his own recommendation he be selected.

17          **2.**      **IBM selected Gupta for layoff for legitimate, non-discriminatory**
18                    **reasons.**

19      As shown above, even if Gupta could establish a marginal *prima facie* case, IBM had

20  legitimate, non-discriminatory reasons for discharging him – i.e., he was laid off as part of a

21  broad reduction in force consistent with IBM's ongoing efforts to streamline operations, reduce

22  costs, and improve productivity, and Suh selected Gupta largely because he had recommended

23  it.

24      Reductions in force have long been recognized as good cause and/or legitimate, non-

25  ---

[2] Gupta bears the burden of proving he was a "qualified individual with a disability" able to perform his duties with
26  or without accommodation.  *Green v. State* (2007) 42 Cal.4th 254, 257-58.  Gupta now claims to be so chronically
disabled that he should be entitled to long-term disability benefits.  Thus, if necessary, IBM will argue at trial that
27  Gupta is not a qualified individual with a disability.  *Lawler v. Montblanc N. Am., LLC,* 2011 U.S. Dist. LEXIS
41339 (N.D. Cal. 2011) (retail store manager who was discharged while on medical leave for arthritis failed to
28  establish disability discrimination under FEHA in part because she remained unable to work after her discharge).

1   discriminatory grounds for discharge.   See, e.g. *Guz v. Bechtel, supra,* 24 Cal.4th at 338

2   ("employer has an absolute right to eliminate (plaintiff's) work unit and to transfer unit's

3   responsibilities…"); *Coleman v. Quaker Oats Co.*, 232 F.3d. 1271, 1282 (9th Cir. 2000) (A RIF

4   (reduction in force) is a legitimate nondiscriminatory reason for laying off an employee.").[3]

5                              **3.      No Evidence of Pretext Exists.**

6             Assuming *arguendo that* Gupta could make out a *prima facie* case, he must show IBM's

7   legitimate nondiscriminatory reason for discharging him was a pretext either (1) indirectly, by

8   showing IBM's proffered reason is "unworthy of credence because it is internally inconsistent or

9   otherwise not believable" or (2) directly, by showing that unlawful discrimination "more likely

10  motivated" IBM. *Fonseca v. Sysco Food Services of Arizona, Inc.*, 374 F.3d 840, 849 (9th Cir.

11  2004).   Where, as here, Gupta's evidence of pretext -- if any -- depends on circumstantial

12  evidence, he must introduce "specific" and "substantial evidence" that IBM's legitimate, non-

13  discriminatory reason for his layoff selection was pretextual.   *Godwin v. Hunt Wesson, Inc.*,

14  150 F.3d 1217, 1221 (9th Cir. 1998); *Morgan v. Regents of the University of California* (2001)

15  88 Cal.App.4th 52, 75 ("substantial" evidence required; it is not enough to show the "employer's

16  decision was wrong, mistaken or unwise").

17            Gupta may disagree with Suh's decision to follow his advice and lay him off.   However,

18  the issue is not the wisdom of IBM's position, but whether admissible evidence shows it "acted

19  with *a motive to discriminate illegally.*"   *Guz*, 24 Cal. 4th at 358 [emphasis added].   Gupta admits

20  that no such motive evidence exists in this case.   [Gupta Depo. 188:21-189:23.]

21            Layoff decisions never come easily, but no objective evidence merits second-guessing

22  Suh's exercise of managerial judgment in selecting Gupta for layoff – especially given the fact

23  Gupta admittedly recommended to Suh that she select him for layoff!   Suh considered this, while

24  weighing Gupta's performance and contributions fairly, and she acted reasonably in selecting

25  Gupta for layoff.   California courts will not "sit as a super-personnel department that reexamines

26  an entity's business decisions." *Marks v. Loral Corp.* (1997) 57 Cal.App.4th 30, 64, quoting *Dale*

27  ───────────────
[3] The reduction in force defense can in some cases be defeated on summary judgment when evidence of unfair

28  selection criteria or pretext exists, but no such evidence exists here. See, e.g. *Liu v. Amway Corporation*, 247 F.3d
    1125, fn.10 (9th Cir. 2003).

DEF'S NOM & MPA ISO OF ITS MOTION FOR SUMMARY
JUDGEMENT OR, IN THE ALT., SUMMARY ADJUDICATION          Case No.  5:14-cv-01358-EJD

1   *v. Chicago Tribune Co.* (7th Cir. 1986) 797 F.2d 458, 464.

2        Gupta lacks any evidence, let alone the specific and substantial evidence necessary to

3   show IBM's legitimate, non-discriminatory reason for his discharge (i.e., job elimination due to a

4   reduction in force) was a pretext for discrimination.  By contrast, the evidence soundly refutes the

5   notion of pretext.  To begin, his alleged disability -- sporadic lower back pain -- was uneventful

6   and in no way interfered with his activity on IBM's behalf which, unless traveling, occurred from

7   his home office.   Again, Gupta admits IBM approved the accommodations he requested.

8   Moreover, Gupta also admits neither Suh nor anyone at IBM made a single negative, belittling, or

9   insensitive remark about him or his medical condition.  [Gupta Depo. 116:8-18.]

10       In a case in which Gupta's performance had declined, he had repeatedly expressed an

11  interest in leaving IBM, had been moved into a new and untested position and then actually

12  recommended he be selected for layoff, it comes as no surprise that he cannot establish pretext

13  sufficient to support his discriminatory discharge claim.

14       Summary judgment for the employer is appropriate when, "given the strength of the

15  employer's showing of innocent reasons, any countervailing circumstantial evidence of

16  discriminatory motive, even if it may technically constitute a *prima facie* case, is too weak to

17  raise a rational inference that discrimination occurred."   *Guz*, 24 Cal.4th at 363 (citations

18  omitted).  This is just such a case.  Because Gupta cannot show "specific, substantial evidence of

19  pretext," he cannot prove IBM's legitimate reasons for terminating him were a pretext for

20  discrimination.  *Deschene v. Pinole Point Steel Co.* (1999) 76 Cal.App.4th 33, 46.  Accordingly,

21  Gupta's first cause of action for disability discrimination should be summarily adjudicated.

22      **C.**    **Gupta's Second Cause of Action for "Failure to Engage in the Interactive**

23            **Process" Fails as a Matter of Law.**

24       Under FEHA, employers must "engage in a timely, good faith interactive process with

25  (a disabled employee)…to determine effective reasonable accommodations, if any, in response to

26  a request for reasonable accommodation."  Cal. Gov. Code, § 12940(n).  The interactive process

27  required by FEHA "is an informal process with the employee … to attempt to identify a

28  reasonable accommodation that will enable the employee to perform the job effectively." *Scotch*

1   *v. Art Institute of California* (2009) 173 Cal.App.4th 986, 1010 (citations omitted).  "Ritualized

2   discussions are not necessarily required."  Id.

3        To establish his "interactive process" claim, Gupta must establish that: (1) he had a

4   disability; (2) he requested IBM make reasonable accommodation; (3) he was willing to

5   participate in an interactive process about reasonable accommodation(s); and (4) IBM failed to

6   participate in a timely good-faith interactive process with him to determine if reasonable

7   accommodation could be made.  *CACI Model Instruction 2513, 2546.*  Here, Gupta admits that

8   Gupta made two reasonable accommodation requests, and IBM granted both of them.

9        Suh personally approved his request to fly business class and for an ergonomic

10   workstation.  [Suh Decl. ¶¶ 9, 10 and Ex. E.]  Thus, IBM unilaterally met its obligation to

11   informally pursue, "without ritualized discussions," accommodations to enable Gupta to perform

12   his job.  Id.; *Wilson v. County of Orange* (2009) 169 Cal.App.4th 1185, 1195.  Accordingly,

13   Gupta cannot establish the fourth element of his claim.  Gupta simply lacks evidence sufficient to

14   show IBM ignored or failed to interact with him about his requested accommodations.  For all

15   these reasons, Gupta's second cause of action fails as a matter of law.

16       **D.**    **Gupta Cannot Sustain His Reasonable Accommodation Cause of Action.**

17        Employers have a duty to reasonably accommodate employees' disabilities.  *Scotch v.*

18   *Art Institute of California* (2009) 173 Cal.App.4th 986; Cal. Gov. Code, § 12940(m).  To

19   establish his failure to accommodate claim, Gupta must prove: (1) he has a disability covered by

20   FEHA; (2) he is a qualified individual with a disability; and (3) IBM failed to reasonably

21   accommodate his disability.  Id.; *Scotch, supra*, at 173 Cal.App.4th, 1009-10.  "Under the

22   FEHA, "reasonable accommodation" means a "modification or adjustment to the workplace that

23   enables the employee to perform the essential functions of the job held or desired.""  *Scotch,*

24   *supra*, 173 Cal.App.4th at 1010.

25       "[T]wo principles underlie a cause of action for failure to provide a reasonable

26   accommodation.  First, the employee must request an accommodation.  Second, the parties must

27   engage in an interactive process regarding the requested accommodation and, if the process fails,

28   responsibility for the failure rests with the party who failed to participate in good faith."  *Gelfo v.*

1  *Lockheed Martin Corp.* (2006) 140 Cal.App.4th 34, 54.  Thus no claim can arise where, as here,

2  the employer *grants* an employee's request for accommodation.

3    No doubt exists that IBM granted the accommodations he requested except that it did not

4  deliver the ergonomic equipment it had ordered to Gupta's home (where he worked remotely),

5  but only because it learned Gupta was leaving the company.  Under these circumstances, his

6  reasonable accommodation claim lacks merit.

7    Other than the STD request that Gupta and his physician subsequently withdrew, Gupta

8  never requested any other accommodation, nor did IBM have any information that might have

9  suggested he needed any further accommodation beyond what it had granted.[4]  If Gupta had any

10  viable concerns he had been denied accommodation, or had experienced discrimination, then he

11  could and should have reported them through any of the myriad outlets IBM provides, including

12  but not limited to human resources and management.  Gupta made no such reports.

13    For all these reasons, Gupta's third cause of action for reasonable accommodation fails.

14    **E.**    **Gupta's Fourth Cause of Action for Fraud Must Be Dismissed.**

15    Gupta asserts a novel, self-entitled, and transparently absurd fraud theory.  He bases his

16  claim entirely on the notion that after IBM informed him he was going to be laid-off and he

17  applied for STD, but before he made the final trip to India IBM's behalf, Ed Matchak made a

18  statement that induced him to withdraw his approved STD claim.  [Gupta Depo. 178:24-179:25.]

19    In any event, Gupta cannot establish essential elements of fraud.  To prove fraud, Gupta

20  must establish:   (1) a misrepresentation; (2) made with knowledge of falsity; (3) intent to

21  defraud; (4) justifiable reliance on the misrepresentation; and (5) resulting damages.  See *Lazar*

22  *v. Superior Court,* 12 Cal.4th 631, 638 (1996); *Cansino v. Bank of America* (2014) 224

23  Cal.App.4th 1462, 1469.    If one element cannot be established, then Plaintiff's entire claim

24  fails. See *Okun v. Morton,* 203 Cal.App.3d 805, 828 (1988).

25    **1.**    **IBM Made No Misrepresentations**

26    Gupta's allegations do not constitute actionable misrepresentations or knowingly false

27

28  ---
   [4] Gupta worked from home.  He was free to monitor his condition while at home, take calls from his bed if he chose – or his porch, hammock, riding lawnmower or traction bar -- and presumably did so.

14

statements by IBM.  To support his claim that Matchak misled him, Gupta will cite language

purportedly found in his Resource Action packet that indicates an employee on short-term

disability may not be given a *departure date* until the earlier of:

> the date the identified employee is certified as able to work full- or part-time with or without appropriate work restrictions by IBM Integrated Health Services, whose decision is final; the date when STDD benefits expire or the date upon which STD benefits are terminated because the employee or the employee's personal physician fails to cooperate with IBM Integrated Health Services, as determined solely by IBM.

This language does not support Gupta's premise.  To begin, individuals selected for layoff prior

to seeking STD, like Gupta, had *already* received a *departure date*.  [See Matchak Decl. ¶ 19;

Gupta Depo. 80:14-17; 223-19-22.]  Furthermore, as Matchak correctly informed Gupta, the law

permits employers to deny or limit STD to employees who have already been selected for layoff. [5]

Matchak made no misrepresentations – his written advice to Gupta was conditional,

equivocal, and non-specific.  [See Matchak Decl. ¶¶ 8-14, Ex. M.]  As shown in the text of their

Instant Message conversation, Matchak merely provided general and non-committal information

in response to Gupta's questions, stating:

- HR would typically review the situation with IBM medical first before delivering notice of separation, "*but ... there's no legal or other reason that prohibits us [IBM] from separating a disabled (STD) employee.*"
- The company would work with medical to decide when the appropriate time to notify the employee of his/her discharge and/or hold off on any performance management decisions.
- Gupta should "*feel free to let me [i.e., Matchak] know if, when you return, we need to get a call with the medical folks.*"

In short, what Matchak told Gupta amounted to nothing more than stating HR and IBM

Medical would review the circumstances of someone who had been selected for layoff and then

took STD leave.  He never told Gupta one way or the other whether STD would be cut-off if an

---

[5] Gupta premises this claim on the notion he was entitled to STD benefits even after his scheduled layoff date. The law requires no such result.  Even in the context of statutorily protected leaves, California law makes clear that individuals who return from protected leaves do not gain an advantage over their peers.  See *Neisendorf v. Levi Strauss Company* (2006) 143 Cal.App.4th 509, 519 (employee who uses CFRA leave "has no greater right to reinstatement or to other benefits and conditions of employment than an employee who remains at work..." citing Cal.Code Regs., tit. 2, § 7297.2, subd. (c)(1)).  And see *Tomlinson v. Qualcomm, Inc.* (2002) 97 Cal.App.4th 934, 940 (persons on CFRA leave are not categorically immunized from layoff during their leave).

DEF'S NOM & MPA ISO OF ITS MOTION FOR SUMMARY
JUDGEMENT OR, IN THE ALT., SUMMARY ADJUDICATION                    Case No.  5:14-cv-01358-EJD

1  employee had a previously scheduled termination departure date due to a resource action. Thus,

2  Gupta made no actionable misrepresentation based on past or existing material facts. <u>See</u>

3  <u>Cansino, supra</u>, 224 Cal.App.4th at 1469-1470. Misrepresentations must be based on positive

4  assertions. *Diediker v. Peelle Financial Corp* (1997) 60 Cal.App.4th 288, 297-298. Parties

5  cannot read into neutral statements to divine misrepresentations. Id. Yet, Gupta plainly distorts

6  Matchak's neutral and tentative statements in a far-fetched effort to establish his claim.

7    Tellingly, in their Instant Messaging Chat, Gupta admitted to Matchak that it would be

8  *"financially advantageous for him to be packaged out"* (as part of the resource action) and that

9  he *"would like to go on STD ... but never return to IBM from STD."* Setting Gupta's self-

10  interested motivation aside, he simply lacks evidence that either Matchak or IBM made any

11  actionable misrepresentations to him.

12        **2. Matchak Lacked Knowledge of Falsity.**

13    Matchak's declaration testimony makes clear he did not believe he had the knowledge to

14  answer Gupta's rather vague hypothetical questions. [Matchak Decl. ¶¶ 12, 14.] He simply

15  offered non-committal general responses and invited Gupta to follow up with him if he wanted

16  to coordinate with IBM Medical. To suggest Matchak knowingly lied in this context is absurd.

17        **3. Matchak Had No Intent To Deceive.**

18    Similarly, Matchak had no intent to deceive Gupta. [Matchak Decl. ¶13.] Nor can one

19  infer any intent to deceive from his statements to Gupta. Indeed, reading the Instant Messaging

20  Chat between them exposes the notion that Matchak sought to mislead Gupta as frivolous.

21       **4. Gupta Cannot Establish Detrimental Reliance.**

22    A highly intelligent man, Gupta cannot credibly contend that Matchak's words were

23  sufficient for him to relinquish his STD claim or that he justifiably relied on any supposed

24  misrepresentations by Matchak. Gupta made his decision to withdraw his STD claim without

25  any undue pressure from IBM. [Suh Decl. ¶¶ 17-19; Matchak Decl. ¶¶ 13, 14.]

26    Tellingly, IBM initially approved his STD claim and only withdrew it at his instigation.

27  Because he withdrew his STD claim, Gupta's employment ended with him not being eligible for

28  STD benefits. This occurred not because of Matchak's words, but due to Gupta's own decision.

1   Had he not withdrawn his STD request, then IBM would have considered whether or not to

2   extend his layoff date pending completion of STD, but Gupta removed that possibility from

3   happening.  Because he wanted to make the trip to India voluntarily (and did so uneventfully),

4   IBM rightfully understood him to be ineligible for STD at the time of his layoff.

5        Gupta cannot establish at least four of the essential elements for fraudulent inducement.

6   Accordingly, the Court should dismiss his fourth cause of action for fraud.

7        **F.     Gupta's Public Policy Cause of Action Must Be Dismissed.**

8        Gupta's fifth cause of action for wrongful discharge in violation of public policy fails as a

9   matter of law because, as shown above, he cannot establish a public policy exception to the at-

10  will doctrine based on disability discrimination or any other violation of FEHA.  *Stevenson v.*

11  *Superior Court* (1997) 16 Cal.4th 880, 894; *Silo v. CHW Med. Found.* (2002) 27 Cal.4th 1097,

12  1104.  Gupta can only defeat the at-will doctrine by establishing his discharge violated public

13  policy.  Id.  In short, lacking a "nexus" between his discharge and any alleged violation of public

14  policy by IBM, Gupta's public policy based wrongful discharge claim must be dismissed.  *Nelson*

15  *v. United Technologies* (1999) 74 Cal.App.4th 597, 613, fn 4.

16       **G.     Plaintiff's Prayer for Punitive Damages Should Be Stricken.**

17       Plaintiff's claims do not warrant punitive damages.   California law "codifies the

18  universally recognized principle that '[t]he law does not favor punitive damages and they should

19  be granted with the greatest caution.'"  *Dyna-Med, Inc. v. Fair Employment & Hous. Comm'n*

20  (1987) 43 Cal.3d 1379, 1392 (citation omitted).  Punitive damages are awarded not to compensate

21  victims but to punish persons "guilty of recklessness or wickedness."  *White v. Ultramar, Inc.*

22  (1999) 21 Cal.4th 563, 569.  The legislature authorizes punitive damages only when a defendant

23  "has been guilty of recklessness or wickedness which amounts to a criminality that should be

24  punished for the good of society . . . "  *White,* 21 Cal.4th at 569, quoting *Warner v. Southern*

25  *Pacific Co.* (1896) 113 Cal. 105, 112.

26       To recover punitive damages, Gupta must show, by clear and convincing evidence, that

27  IBM engaged in oppression, fraud, or malice, or authorized or ratified such conduct.  Cal. Civ.

28  Code, § 3294(b); *Kelly-Zurian v. Wohl Shoe Co.* (1994) 22 Cal.App.4th 397, 419-421; *Dumas v.*

17

1   *New United Motor Mfg.*, 2007 U.S. Dist. LEXIS 30042 (N.D. Cal. Apr. 24, 2007).  To be guilty

2   of "malice," a defendant must have "intended ... to cause injury to the plaintiff or [engaged in]

3   despicable conduct... with a willful and conscious disregard of the rights or safety of others."  Cal.

4   Civ. Code, § 3294(c) (1); *Cruz v. Home Base* (2000) 83 Cal.App.4th 160, 167.

5        At most, this case amounts to nothing more than a cynical attempt by an executive -- who

6   wanted to leave IBM and encouraged his boss to select him for layoff -- to twist general

7   statements made in good faith by an HR support person (Matchak) into an absurd fraud claim.

8   Even if HR representative Matchak unwittingly provided erroneous information -- and he did not

9   -- neither his actions nor those of anyone at IBM justify a finding of malice, fraud, or oppression.

10   The undisputed evidence does not allow a finding by clear and convincing evidence that IBM

11   acted with malice, fraud, or oppression towards Gupta.   Therefore, the Court should strike

12   Plaintiff's punitive damages prayer.

13   **IV.    <u>CONCLUSION</u>**

14        No evidence suggests anyone employed by IBM involved in any decision(s) leading up

15   to Gupta's termination acted for discriminatory or improper motive.  Gupta has not shown, nor

16   can he produce, evidence sufficient to establish a genuine material issue as to IBM's intentions.

17        For all the reasons set forth above, the Court can and should grant IBM's motion for

18   summary judgment or, in the alternative, grant partial summary judgment with respect to his First,

19   Second, Third, Fourth and Fifth Causes of Action.

20                                        Respectfully submitted,

21   Dated: June 8, 2015                  JACKSON LEWIS P.C.

22

23                              By:  _____

24                                        Mitchell F. Boomer
                                          Alka Ramchandani
25                                        Attorneys for Defendant
                                          INTERNATIONAL BUSINESS
26                                        MACHINES CORPORATION

27

28

DEF'S NOM & MPA ISO OF ITS MOTION FOR SUMMARY
JUDGEMENT OR, IN THE ALT., SUMMARY ADJUDICATION                    Case No.  5:14-cv-01358-EJD