TOMAS M. FLORES (SBN 236876)
97 S. Second Street - Suite 100
San Jose, California 95113
Tel: (760) 410-8356
Fax: (760) 854-4300
*tom@floreslegal.com*

Counsel for Plaintiff
PIYUSH GUPTA

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PIYUSH GUPTA,<br><br>                    Plaintiff,<br><br>             v.<br><br>INTERNATIONAL BUSINESS MACHINES CORPORATION (IBM),<br><br>                    Defendant. | Case No. 5:14-cv-01358-EJD<br><br>**PIYUSH GUPTA'S RESPONSE TO IBM'S SEPARATE STATEMENT OF GENUINE ISSUES OF MATERIAL FACT SUMMARY ADJUDICATION**<br><br>Date:     July 30, 2015<br>Time:     9 a.m.<br>Ctrm.:    4 - 5th Floor<br>Judge:   Hon. Edward J. Davila<br>            District Judge<br><br>Removal Filed: March 26, 2014<br>Trial Date:     January 5, 2016 |

Plaintiff PIYUSH GUPTA submits the following Response to the Separate Statement of Undisputed Material Facts that Defendant IBM submitted in support of its motion for summary judgment or, in the alternative, summary adjudication.

| Moving Party's Undisputed Facts and Supporting Evidence | Opposing Party's Response and Supporting Evidence |
|---|---|
| **CLAIM NO. 1: DISABILITY DISCRIMINATION** ||

1. Plaintiff cannot make out the third prong of the *prima facie* case for disability discrimination (i.e. requiring a causal link between his alleged disability and IBM's decision to select him for layoff).

| Moving Party's Undisputed Facts and Supporting Evidence | Opposing Party's Response and Supporting Evidence |
|---|---|
| Fact 1: When she recommended plaintiff be selected for layoff as part of reduction in force, Suh was heavily influenced by the fact plaintiff had recommended to him that she put him on her layoff list.<br><br>[Declaration of Inhi Suh ("Suh Decl.") ¶13; see also Deposition of plaintiff Piyush Gupta ("Gupta Depo") 76:4-77:25 (admitting he suggested to Suh that she place him on her layoff list); Gupta Depo 75:12-15, 78:7-13 (admitting Suh told him she was "taking him up" on his "suggestion"]<br><br>**NOTE:** All excerpts to plaintiff's deposition cited in Defendant IBM's moving papers are attached at the Declaration of Mitchell F. Boomer filed contemporaneously herewith. | **FACT 1: DISPUTED.**<br>Inhi Suh rejected Mr. Gupta's spontaneous remark that she lay him off rather than let go anyone on his team. She knew he wasn't serious, and even if he was, she emphatically rejected even the notion that she would consider laying off Mr. Gupta because IBM regarded him too valuable of an employee, at least at the time that he and Inhi Suh had this conversation.<br><br>[Piyush Gupta Declaration, dated June 22, 2013 (**"_Gupta Dec._"**) ¶¶ 2, 3, 9, 10,13, 14]<br><br>[Saurabh Jain Declaration, dated June 22, 2015 (**"_Jain Dec._"**) ¶¶ 2-9.<br><br>Further, Inhi Suh delayed Mr. Gupta's efforts to receive ergonomic furniture. [Gupta Dec. ¶ 20-27] |
| Fact 2: In selecting plaintiff for layoff, Suh also considered that: the position he held had been newly created by her for him after he had previously expressed a desire to leave IBM (and was a luxury), his function could be more effectively replaced by others, and she had rated him "Needs Improvement" on his most recent performance review.<br><br>[Suh Decl. ¶13] | **FACT 2: DISPUTED**<br><br>Mr. Gupta's position was never described to him as a luxury nor that others could easily replace his function. In fact, to the contrary, Inhi Suh agreed that he was uniquely qualified for the new role because of his seniority, connection back to headquarters, and under-standing of the Indian culture, and that it was a very important role for IBM. She stated "we |

| Moving Party's Undisputed Facts and Supporting Evidence | Opposing Party's Response and Supporting Evidence |
|---|---|
| | really haven't penetrated India in terms of software." She agreed that "our traditional approach of having expats that don't know the culture fly in to make an impact is not viable." She states that his "impact would be significantly bigger than what a local sales person could do because of the connection back to headquarters and seniority." *See* Inhi Suh Dec. Exhibit C (email from Ms. Suh to IBM General Manager describing my strengths). [Gupta Dec. ¶ 13.] <br><br> Mr. Gupta had previously expressed a desire to leave a product management position to a newly agreed to business development position in the email referred in Suh Decl. [Gupta Dec. ¶¶ 3, 7, 14, 17, 25] <br><br> But by June 2013, Mr. Gupta had no plan or wish to leave IBM. In fact, he was enjoying his new role and was quite successful at it. When Inhi Suh told him that he was going to be laid off, he expressed these sentiments to her and that he was surprised by IBM's decision. [Gupta Dec. ¶ 14.] |

2. IBM had legitimate, non-discriminatory reasons for discharging plaintiff.

| | |
|---|---|
| Fact 3: In June 2013, IBM's Software Group implemented a broad reduction in force (referred to by IBM as a "Resource Action") to streamline operations, reduce costs and improve productivity. <br><br> [Suh Decl. ¶ 11; Declaration of Mr. Matchak | **FACT 3:** **DISPUTED.** <br><br> The reduction in force was not broad, and disproportionally affected product managers according to industry averages. [Gupta Dec. ¶ 3] |

| Moving Party's Undisputed Facts and Supporting Evidence | Opposing Party's Response and Supporting Evidence |
|---|---|
| ("Matchak Decl.") ¶ 4] | The reasons that IBM gives for Mr. Gupta's termination are pretextual. The proximity of the time that he started to insist on accommodations in February 2013 and March 2013 to the time that his manager decided in June 2013 to lay him off in indicate a discriminatory intent. [Gupta Dec. ¶¶ 24, 25, 30, 32] |
| Fact 4: The IBM Software Group's broad Resource Action resulted in significant layoffs.  [Suh Decl. ¶ 11; Matchak Decl. ¶ 4; Gupta Depo 215:11-14] | **FACT 4: DISPUTED.** The resource action disproportionately affected product management. Product managers tend to be more experienced, and therefore older.  [Gupta Dec. ¶ 3] |
| Fact 5: Suh was tasked with recommending individuals from her team who could be laid off in an effort to streamline operations and improve productivity.  [Suh Decl. ¶ 11] | **FACT 5: DISPUTED.**  Suh sought Mr. Gupta's advice about who should be laid off, and Mr. Gupta advised that laying off product managers would not improve productivity.  [Gupta Dec. ¶ 3] |
| Fact 6: When Suh selected plaintiff for layoff, she was heavily influenced by his the fact he had recommended she do so. Suh also considered that: the position he held had been newly created by her for him after he had previously expressed a desire to leave IBM (and was a luxury), his function could be more effectively replaced by others, and she had rated him "Needs Improvement" on his most recent performance review.  [Suh Decl. ¶ 13; see also Gupta Depo 76:4-77:25 (admitting he suggested to Suh that she place him on her layoff list); Gupta | **FACT 6: DISPUTED.** Suh rejected Mr. Gupta's suggestion that he should be laid off. Mr. Gupta was enjoying his new position at IBM, and making significant improvements to IBM revenue.  [Gupta Dec. ¶¶4-8, 13-15, 32]  Additional Facts in Dispute:  Mr. Gupta's 2012 negative review was not justified because IBM had notice that it would take at least three years to turn around the DB2 organization. |

| Moving Party's Undisputed Facts and Supporting Evidence | Opposing Party's Response and Supporting Evidence |
|---|---|
| Depo. 75:12-15, 78:7-13 (admitting Suh told him she was "taking him up" on his "suggestion"] | [Gupta Dec. ¶ 6, 7, 11-13; Suh Dec. Exhibit A] |

3. Plaintiff cannot show IBM's legitimate non-discriminatory reasons for discharging him were a pretext for discrimination.

| | |
|---|---|
| Fact 7: Plaintiff admitted in his deposition testimony that he knew of no facts suggesting discriminatory motive by IBM.<br><br>[Gupta Depo 188:21-189:23] | **FACT 7: DISPUTED.**<br><br>Mr. Gupta admitted that no one made any comments in front of him or directed comments at him in person that would have revealed discriminatory intent. He later came to find out, however, in the documents IBM later produced that his termination was for a discriminatory purpose due, at least in part, to the proximity between the time Gupta began asking for accommodations, and the time of his termination disregarding his success in his new role.<br>[Gupta Dec. ¶ 7-8, 25, 23, 30, 32]<br><br>For example, Mr. Gupta learned that his peers made disparaging comments resulting from his inability to make frequent trips to the DB2 development team in Tornoto, Canada.<br><br>[Gupta Dec. ¶ 4] |
| Fact 8: Plaintiff also admits that neither Suh nor anyone at IBM made any negative, belittling or insensitive remarks about him or his medical condition.<br><br>[Gupta Depo 116:9-18] | **FACT 8: DISPUTED.**<br>Mr. Gupta admitted that no one made any comments in front of him or directed comments at him in person that were negative, belittling or insensitive. He was not in possession of IBM's discovery when |

| Moving Party's Undisputed Facts and Supporting Evidence | Opposing Party's Response and Supporting Evidence |
|---|---|
|  | he made this statement. IBM's discovery contain emails that are disparaging to Mr. Gupta. In Mr. Gupta's performance review, Mr. Gupta's peers have communicated negative reviews to Inhi Suh. [Gupta Dec. ¶ 4-7] |
| Fact 9: In February or March of 2013, Gupta requested two separate accommodations: (1) permission to fly business class on overseas flights and (2) an ergonomic workspace.<br><br>[Gupta Depo.  108:2-109:25; 114:1-116:6; Suh Decl. ¶ 9, 10, Ex. E] | **FACT 9:     DISPUTED.**<br><br>Mr. Gupta also requested to be put on disability.<br>[Gupta Dec. ¶¶ 55-61 ; Gupta Depo. 116:5]*<br><br>*\* All citations to Mr. Gupta's deposition appear in the transcript excerpts submitted by IBM.* |
| Fact 10:   IBM granted both plaintiff's request to fly business class on overseas flights and to order ergonomic furniture for his home office.<br><br>[Gupta Depo.  108:2-109:25; 114:1-116:6; Suh Decl. ¶ 9, 10, Ex. E] | **FACT 10:     DISPUTED.**<br>IBM granted Mr. Gupta's requests for ergonomic furniture in paper only, but never delivered it.<br><br>Inhi Suh held up his request for ergonomic furniture until July 14, 2013, which was after she told him he was going to get laid off.<br><br>[Gupta Dec. ¶20-23, 27-30] |

| Moving Party's Undisputed Facts and Supporting Evidence | Opposing Party's Response and Supporting Evidence |
|---|---|

### CLAIM NO. 2: FAILURE TO ENGAGE IN THE "INTERACTIVE PROCESS"

4. Plaintiff cannot meet the fourth essential element of this claim (i.e. failure to engage in good faith interactive process over possible reasonable accommodation).

| | |
|---|---|
| Fact 11: IBM granted both plaintiff's requests for reasonable accommodation without engaging in "ritualized discussions" by approving his request to fly business class on long distance flights and ordering ergonomic furniture for his home office.<br><br>[Gupta Depo. 108:2-109:25; 114:1-116:6; Suh Decl. ¶ 9, 10, Ex. E] | FACT 11: DISPUTED.<br>Mr. Gupta never received any ergonomic furniture.<br><br>Further, IBM frustrated his efforts to obtain ergonomic furniture for months. Ms. Suh approved the request after she told him he was going to be laid off, and then someone else at IBM cancelled the order for the furniture before it was shipped because he was going to get laid off.<br><br>[Gupta Dec. ¶20-23, 27-30] |

### CLAIM NO. 3: "Reasonable Accommodation"

5. Plaintiff cannot satisfy the third essential element of this claim (i.e. failure to provide reasonable accommodation).

| | |
|---|---|
| Fact 11: IBM granted both plaintiff's requests for reasonable accommodation without engaging in "ritualized discussions" by approving his request to fly business class on long distance flights and ordering ergonomic furniture for his home office.<br><br>[Gupta Depo. 108:2-109:25; 114:1-116:6; Suh Decl. ¶ 9, 10, Ex. E] | FACT 11: DISPUTED.<br>Mr. Gupta never received any ergonomic furniture.<br><br>Further, IBM frustrated his efforts to obtain ergonomic furniture for months. Ms. Suh approved the request after she told him he was going to be laid off, and then someone else at IBM cancelled the order for the furniture before it was shipped because he was going to get laid |

| Moving Party's Undisputed Facts and Supporting Evidence | Opposing Party's Response and Supporting Evidence |
|---|---|
| | off. |
| | Additionally, Mr. Gupta was only approved for business class arrangements for flights lasting longer than six hours. |
| | [Gupta Dec. ¶20-23, 27-30, Gupta Depo. 109:9] |

**CLAIM NO. 4: FRAUDULENT INDUCEMENT**

6. Plaintiff cannot identify any misrepresentation, and thus cannot establish the first essential element of his fraudulent inducement claim.

| | |
|---|---|
| Fact 12: The statements plaintiff alleges to be misrepresentations made by Mr. Matchak, as shown in their "Instant Messaging Chat" transcript, were general, equivocal and non-committal.<br><br>[Matchak Decl. ¶¶ 8-14, Ex. M] | **FACT 12: DISPUTED.**<br>Mr. Gupta asked Edward Matchak at least four times about the interplay between disability and layoffs. Mar. Matchak relayed misinformation during their online instant message conversation and subsequent telephone calls with Mr. Gupta.<br><br>Specifically, on June 19, 2013 at 5:53:31 P.M., through instant message, Mr. Gupta asks Mr. Matchak if a person who is on short-term disability, or is applying for it, can be separated, and Mr. Matchak responds in the unqualified affirmative.<br><br>Also, in his declaration, Mr. Matchak admits that "I frankly did not know whether an employee who had a previously scheduled discharge date due to having been previously selected for layoff in a Resource Action could then go out on STD leave and extend their employment period until after they were removed from STD. My understanding now is that IBM |

| Moving Party's Undisputed Facts and Supporting Evidence | Opposing Party's Response and Supporting Evidence |
|---|---|
| | would look at such situations individually and may distinguish between someone in that position and someone who was already out on STD leave prior before being selected for layoff."<br>[Gupta Dec. ¶ 38, 43, 52-56; Defendant's Exhibit M, Matchak Dec. ¶ 11]<br><br>Mr. Matchak alleges that in their instant message conversation, he told Mr. Gupta: "If an employee on STD had been selected for layoff as part of a Resource Action, HR would typically review the situation with IBM Medical (sometimes referred to as IBM Integrated Health Services) before delivering notice of separation '*but…there's no legal or other reason that prohibits us [IBM] from separating a disabled (STD) employee.*'"<br><br>Mr. Matchak, however, never made that statement in the instant message conversation. In fact, that statement is part of Mr. Gupta's question to Mr. Matchak on July 19, 2013 at 5:54:33 P.M.<br><br>Additionally, makes diametrically opposed and inconsistent statements regarding what he may or may not have told Mr. Gupta about short-term disability. Mr. Matchak alleges, unequivocally and without qualification:<br><br>*I do not recall having any other conversations with Mr. Gupta about STD until his exit interview [other than the instant messaging exchanges that occurred on June 9, 2013).*<br>[Matchak Dec. ¶ 9.] |

| Moving Party's Undisputed Facts and Supporting Evidence | Opposing Party's Response and Supporting Evidence |
|---|---|
| | Mr. Matchak alleges, again unequivocally and without qualification:<br><br>*At no time did I ever encourage Mr. Gupta to not seek STD leave, or not to apply for STD or suggest that taking STD would not benefit him. At no time did I ever suggest to Mr. Gupta that he could or should withdraw an approved STD claim. Nor did I ever tell Mr. Gupta that if he were on STD, his employment would or would not be terminated as of the scheduled date for his layoff.*<br>[Matchak Dec. ¶ 13.]<br><br>If Mr. Matchak cannot recall if he had other conversations with Mr. Gupta about short-term disability, how then can he state with such certainty that he did not "encourage Mr. Gupta to not [sic] seek STD leave, or not to apply for STD or suggest that taking STD would not benefit him."<br><br>Mr. Gupta has no doubt and remembers clearly the phone conversations that he had with Mr. Matchak about short-term disability, and having been told that he could be laid off if he went on short-disability leave.<br><br>[Gupta Dec. ¶ 40: "At all times that we communicated via Instant Messaging and when we spoke on the phone, he made me believe that he knew what he was talking about and that I would be laid off no matter what I did or what I would do later. On this point, he was unequivocal."] |

| Moving Party's Undisputed Facts and Supporting Evidence | Opposing Party's Response and Supporting Evidence |
|---|---|
| 7. Plaintiff cannot show Matchak had actual knowledge of the supposed falsity of his alleged statement(s), and thus cannot establish the second essential element of fraud. | |
| Fact 13: Matchak lacked the knowledge to answer Gupta's questions, gave non-committal general responses, and invited Gupta to follow up with him later if he wanted to coordinate with IBM Medical.<br><br>[Matchak Decl. ¶¶ 12, 14] | **FACT 13: DISPUTED.**<br>Mr. Matchack never told Mr. Gupta that he lacked knowledge to answer Mr. Gupta's questions. Mr. Matchak was his designated Human Resources partner and was his trusted expert on human resources issues.<br><br>[Gupta Dec. ¶ 38, 43]<br><br>Response to FACT 12 is incorporated by reference. |
| 8. Plaintiff cannot show Matchak had actual knowledge of the supposed falsity of his alleged statement(s), and thus cannot establish the second essential element of fraud. | |
| Fact 14: Matchak denies having any intent to deceive Gupta.<br><br>[Matchak Decl. ¶13] | **FACT 14: DISPUTED.**<br><br>Mr. Matchak's denial is belied by his inconsistent testimony and misstatement of facts.<br><br>Response to FACT 12 is incorporated by reference.<br><br>Mr. Gupta asked Mr. Matchak at least four times about the interplay between disability and layoffs. Mr. Matchak relayed misinformation during their online instant message conversation and subsequent telephone calls with Mr. Gupta. Specifically, on June 19, 2013 at 5:53:31 P.M., Mr. Gupta through instant message asks Mr. Matchak if a person who is on short-term disability, or is applying for it, |

| Moving Party's Undisputed Facts and Supporting Evidence | Opposing Party's Response and Supporting Evidence |
|---|---|
| | can be separated, and Mr. Matchak responds in the unqualified affirmative. [Gupta Dec. ¶40-42, 50-54, 56, 59; Matchak Dec. Exhibit M] |

9. Plaintiff cannot show he reasonably relied on Matchak's supposed misrepresentation(s), and thus cannot demonstrate the fourth essential element of fraud.

| Moving Party's Undisputed Facts and Supporting Evidence | Opposing Party's Response and Supporting Evidence |
|---|---|
| Fact 15: Plaintiff contacted his doctor who in turn provided paperwork that plaintiff caused to be submitted to IBM withdrawing his STD request. [Gupta Depo 92:24-92:2, 96:8-12, 152:17-153:17; 155:20-156:1, 232:4-7, Ex's 9, 15, 28; Suh Decl. ¶ 18, Ex F] | **FACT 15:    DISPUTED**. Mr. Matchack lured Mr. Gupta into foregoing the opportunity for an evaluation by IBM, and prevented Mr. Gupta from receiving short-term benefits, as well as possible long-term disability benefits. [Gupta Dec. ¶58 ] |
| Fact 16: IBM cancelled plaintiff's STD leave request, which IBM had previously approved, only after receiving plaintiff's doctor's withdrawal of his STD leave request. Based on his decision to opt out of STD, Gupta was not on STD when his employment ended. [Suh Decl. ¶ 18, Ex. F; Gupta Depo 92:24-92:2, 96:8-12, 152:17-153:17; 155:20-156:1, 232:4-7, Ex's 9, 15, 28] | **FACT 16:    DISPUTED**. But for Matchak's misrepresentations regarding the benefits he was entitled to receive, Mr. Gupta would have stayed on short-term disability and not be subject to the reduction in workforce. [Gupta Dec. ¶ 37, 39-43, 46-47, 50-60] |
| Fact 17: Gupta was not on STD when his employment ended, and thus not eligible for STD at the time of his separation from IBM. [Suh Decl. ¶ 18, Ex. F; Matchak Decl. ¶ 17; Gupta Depo 148:16-20, 155:20-156:1, Ex's 9, 15, 28] | **FACT 17:    DISPUTED**. Mr. Gupta was approved for short-term disability. If Mr. Gupta knew the truth about IBM's short-term disability policies, Mr. Gupta would have elected to take them. [Gupta Dec. ¶ 37-47, 50-60] |

| Moving Party's Undisputed Facts and Supporting Evidence | Opposing Party's Response and Supporting Evidence |
|---|---|
| | Response to FACT 12 is incorporated by reference. |
| Fact 18: Plaintiff wrote to IBM's Integrated Health Service's Mary Temo on or about August 8, 2013: *"Instead of going on disability, I have chosen to retire."*  [Gupta Depo 129:9-12, Ex. 7] | **FACT 18:   UNDISPUTED**. Plaintiff did not go on disability because he acted on misinformation provided by Mr. Matchak.  Response to FACT 12 is incorporated by reference.  Additional Facts in Dispute:  Mr. Gupta was approved for short-term disability.  If Mr. Gupta knew the truth about IBM's short-term disability policies, Mr. Gupta would have elected to take them.  [Gupta Dec. ¶ 37, 39-43, 46-47, 50-60] |
| Fact 19:  Plaintiff considered the trip he chose to take to India to be "important."  [Suh Decl. ¶ 17; Gupta Depo 96:3-7; 90:13-21] | **FACT 19:   DISPUTED**.  Mr. Gupta was not alone in considering the trip to be "important." Inhi Suh and IBM's India sales team also considered the trip to be "important."  [Gupta Dec. ¶ 32, 33, 44] |
| Fact 20:  Plaintiff added time on to the end of his trip to India for a personal vacation.  [Gupta Depo 96:23-97:6; Suh Decl. ¶ 19] | **FACT 20:   UNDISPUTED**.  The main purpose of the trip, however, and the only reason he took the trip, was to settle a dispute with a financial services company in Mumbai, India.  Mr. Gupta's efforts resulted in millions of dollars in revenue to IBM. [Gupta Dec. ¶ 32, 33, 44] |

` - 13 -

PLAINTIFF'S RESPONSE TO IBM'S SEPARATE STATEMENT                    Case No. 5:14-CV-01358-EJD

| Moving Party's Undisputed Facts and Supporting Evidence | Opposing Party's Response and Supporting Evidence |
|---|---|
| **CLAIM NO. 5: WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY** | |
| 11. Plaintiff cannot establish the necessary public policy violation required to support his claim for wrongful discharge in violation of public policy. | |
| Fact 21: As detailed in Facts 1-5 above, and incorporated herein by reference, IBM laid off plaintiff from his position as part of a broad reduction in force within its Software Group. His manager, Suh, selected plaintiff for layoff largely because he had recommended she do so; she also considered the fact his current position had been newly created by her, and could be replaced more easily by others as well as his past "Needs Improvement" review.<br><br>Gupta Depo 76:4-77:25 (admitting he suggested to Suh that she place him on her layoff list); Gupta Depo 75:12-15, 78:7-13 (admitting Suh told him she was "taking him up" on his "suggestion," 215:11-14; Suh Decl. ¶¶ 11-13; Matchak Decl. ¶ 4; Gupta Depo 215:11-14 ] | **FACT 21: DISPUTED.**<br><br>Mr. Gupta made an "off the cuff" recommendation (while transitioning from a product management position to a business development position) six months before Ms. Suh gave Mr. Gupta notice that he was being laid off. Mr. Gupta could not be easily replaced by others. Mr. Gupta's "Needs Improvement" review was objectionable on its face.<br>[Gupta Dec. ¶ 3-15, 29-30, 32, 34]<br><br>Responses to FACTS 1 – 5 are incorporated by reference<br><br>Mr. Gupta's manager, Inhi Suh, foresaw that Mr. Gupta would not be able to continue his intense travel, meeting-and-sitting calls from home routine because Suh knew of Mr. Gupta's accommodation requests. It was evident that Suh was deliberately not acting on the approval of Mr. Gupta's request's for ergonomic furniture. Instead, Suh decided to lay Mr. Gupta off, then after she did that, Suh went ahead and approved the ergonomic furniture request (on July 14, 2013) so it did not appear that it influenced Suh's decision in any way.<br><br>[Gupta Dec. ¶30] |

| Moving Party's Undisputed Facts and Supporting Evidence | Opposing Party's Response and Supporting Evidence |
|---|---|
| Fact 22: As detailed in Facts 6 and 7 above, which IBM incorporates herein by reference, plaintiff admitted in his deposition testimony that he knew of no facts suggesting discriminatory motive and also admits that neither Suh nor anyone at IBM made any negative, belittling or insensitive remarks about him or his medical condition.<br><br>[Gupta Depo 188:21-189:23; 116:9-18] | FACT 22: DISPUTED.<br><br>Mr. Gupta was not in possession of IBM's discovery at the time he made that comment. After reviewing the discovery, IBM employees in fact did make several negative remarks about Mr. Gupta. Some of these remarks were evident in Mr. Gupta's 2012 performance review.<br><br>[Gupta Dec. ¶3-11 ; Suh Dec. Exhibit A]<br><br>Response to FACTS 6 and 7 are incorporated by reference |
| Fact 23: As detailed in Fact 8 (and as repeated in Facts 9 and 10) above, IBM never opposed plaintiff's requests for reasonable accommodation. To the contrary, IBM appropriately granted both plaintiff's requests for reasonable accommodation by approving his request to fly business class on long distance flights and ordering ergonomic furniture for his home office.<br><br>Gupta Depo. 108:2-109:25; 114:1-116:18; Suh Decl. ¶ 9, 10, Ex. E | FACT 23: DISPUTED.<br><br>IBM frustrated Mr. Gupta's attempts to acquire ergonomic furniture for months. IBM saw to it that Mr. Gupta never received any ergonomic furniture.<br><br>[Gupta Dec. ¶ 20-23, 26-27, 30]<br><br>Response to FACTS 8 – 9 are incorporated by reference |
| Fact 24: Plaintiff was an at-will employee.<br><br>[Gupta Depo 167:3-169:8; Ex. 21] | FACT 24: UNDISPUTED. |
| Fact 25: IBM hereby incorporates Facts 1-24 above as if fully set forth herein. | FACT 25: DISPUTED.<br><br>Responses to FACTS 1 – 24 are incorporated by reference. |

| Moving Party's Undisputed Facts and Supporting Evidence | Opposing Party's Response and Supporting Evidence |
|---|---|
| **PUNITIVE DAMAGES** | |
| 12. Plaintiff cannot establish by clear and convincing evidence that IBM acted with malice, fraud, or oppression. | **FACT 26:   DISPUTED**<br><br>Mr. Gupta trusted Mr. Matchak as his human resources advisor. Mr. Gupta can show that IBM acted with malice and oppression because Mr. Matchak, on multiple occasions, made misstatements of material fact that Mr. Matchak knew would cause harm to Mr. Gupta.<br><br>[Gupta Dec. ¶¶ 38, 43, 47, 52-61]<br><br>Ms. Suh decided to terminate Mr. Gupta because his utility had decreased when he started to report back problems that would take him out of circulation while he recovered.<br><br>[Gupta Dec. ¶ 30]<br><br>Responses to FACTS 1 – 24 are incorporated by reference. |

Attestation:  I attest that the evidence cited above fairly and accurately supports or disputes the facts as asserted.

Dated:  June 22, 2015         By: _____
                                               Tomas M. Flores
                                               Attorney for Plaintiff
                                               PIYUSH GUPTA